**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REBECCA WRIGHT<br>2111 Diamond Place<br>Royersford, PA 19468<br><br>Plaintiff,<br><br>v.<br><br>TOWER HEALTH MEDICAL GROUP<br>420 South 5th Avenue West<br>Reading, PA 19611<br><br>and<br><br>PHOENIXVILLE CLINIC COMPANY, LLC<br>140 Nutt Road<br>Phoenixville, PA 19460<br><br>Defendants. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Ms. Rebecca Wright ("Plaintiff," or "Ms. Wright,") by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Ms. Wright has initiated this action to redress violations by Tower Health Medical Group and Phoenixville Clinic Company, LLC (collectively "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et seq.); the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 et seq.); and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. § 951 et seq.).

2. Ms. Wright alleges, *inter alia*, that she notified Defendants of her disabilities and serious medical conditions, properly requested accommodations in the form of intermittent leave

and then a short time later, Defendants terminated Ms. Wright due to her disabilities and need for leave and other accommodations.

3. As a direct consequence of Defendants' unlawful actions, Ms. Wright seeks damages as set forth herein.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

5. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because the events giving rise to this lawsuit occurred here and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

7. On or about May 5, 2025, Ms. Wright filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed the Charge with the Pennsylvania Human Relations Commission ("PHRC").

8. Ms. Wright has properly exhausted her administrative remedies before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving the EEOC's Right-to-Sue letter.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Ms. Wright is an adult individual, with an address as set forth in the caption.

11. Defendant Tower Health Medical Group is a Pennsylvania non-profit entity with a principal place of business as set forth in the caption.

12. Defendant Phoenixville Clinic Company, LLC is a Pennsylvania LLC with a principal place of business as set forth in the caption at which it employed Plaintiff.

13. Upon information and belief, Defendant Phoenixville Clinic Company is a wholly owned subsidiary of Defendant Tower Health Medical Group and was the entity through which Defendants paid Plaintiff. Throughout her employment, Defendants interchangeably used both Defendant entities in controlling the terms and conditions of Plaintiff's employment.

14. Due to overlapping resources, management, advertisement, controls, benefits, directives, and other (joint and integrated) management structures, Defendants are properly single, joint and/or integrated employers for all purposes in this lawsuit.

15. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

16. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

17. On or about April 22, 2024, Defendants hired Ms. Wright as a non-exempt Medical Assistant and employed her in that capacity until unlawfully terminating her on or about February 20, 2025, as discussed herein.

18. As a Medical Assistant, Ms. Wright was primarily responsible for clerical work such as greeting patients, answering phones, scheduling appointments, and facilitating the flow of patients through the office.

19. Throughout her employment, Ms. Wright was primarily supervised by Defendants' Practice Administrator Theresa Kull ("Kull") and Regional Director Kelli McNeil ("McNeil").

20. Ms. Wright was a hard-working employee with little or no history of performance or discipline concerns (outside of alleged attendance concerns as discussed herein).

21. Ms. Wright unfortunately suffers from a chronic migraine condition, which causes her to suffer episodic debilitating migraine headaches along with associated complications and conditions.

22. As a result of these aforementioned disabilities, Ms. Wright is, at times, substantially limited in her ability to perform major life activities such as sleeping, thinking, communicating, etc.

23. Ms. Wright was still able to perform the essential functions of her position with or without accommodations but requested and/or required reasonable accommodations (at times) in the form of intermittent leave when her aforementioned disabilities flared-up as discussed *infra*.

24. At all times material, Ms. Wright informed Kull of her aforementioned disabilities and need for intermittent leave. Ms. Wright and Kull had a very open and communicative relationship and Ms. Wright always kept Kull informed if she was going to be late or absent due to her migraines.

25. Kull initially told Ms. Wright that she would "take care of it" and Ms. Wright even picked up additional shifts at Defendant's Collegeville, PA location to help Kull cover staffing shortages under the assumption that in doing so it would remove attendance points.

26. Ms. Wright continued to use intermittent leave sparingly when her aforementioned disabilities flared up and as needed.

27. By way of illustration, on or about October 23, 2024, Ms. Wright notified Kull that she was running late because of a migraine. However, Defendants still assessed Ms. Wright with 1.5 attendance points.

28. Again, on or about October 28, 2024, Ms. Wright notified Kull that she was going to be absent due to a "cluster of migraines." Defendants assessed Ms. Wright 3 attendance points.

29. Finally, on or about December 5, 2024, Ms. Wright called out again due to her migraines and was assessed another 3 points.

30. On or about January 2, 2025, Ms. Wright sought treatment for conditions exacerbating her aforementioned disabilities, required a brief one (1) day absence, and notified Defendants' management of same. Defendants assessed her three (3) attendance points.

31. However, despite Defendants' explicit knowledge of Ms. Wright's aforementioned disabilities, Defendants utilized a points-based attendance policy that assesses points for absences regardless of the reason and without any individualized assessment of an employee's justification.

32. Specifically, Defendants' attendance policy provides for termination when an employee accrues 18 attendance points. For example, employees are assessed 3 points per absence, 0.5-2 points for a late arrival (depending on time), 1 point for leaving early, etc.

33. However, Defendants told Ms. Wright that the reason for her absences did not matter and that her attendance points (even those that Defendants knew were for absences directly related to treating her aforementioned disabilities) would not be removed for any reason.

34. Had these attendance points been properly removed or credited as ADA qualifying, Ms. Wright's total attendance points would have remained below the termination threshold.

35. Contrary to the requirements of the ADA, Defendants attempt to wash their hands of any obligation under the ADA, and further claim that Ms. Wright could *only* discuss her need for accommodations with their Third-Party Administrator Sun Life Financial ("Sun Life").

36. To further illustrate the absurdity of Defendants' application of its attendance policies, Defendants even disciplined Ms. Wright for *following* Defendants' own policy relating to employees with communicable diseases such as the flu.

37. By way of example, on or about January 28, 2025, Ms. Wright notified Kull that she had tested positive for flu and would be absent (consistent with Defendants' flu policy). Kull thanked her, told her to feel better, yet Defendants still assessed Ms. Wright three (3) attendance points.

38. When Ms. Wright returned to work on or about January 30, 2025, for the first time ever Kull directed Ms. Wright to contact Sun Life to apply for FMLA (by leaving a note on her desk).

39. Ms. Wright at all times prior communicated with her direct managers and Defendants' Human Resources about her condition and need for accommodations, which was

consistent with Defendants' attendance policy. At no time prior to January 30, 2025 did Kull or anyone else at Defendants instruct Ms. Wright to contact Sun Life.

40. Acting on Kull's directive, on or about January 31, 2025, Ms. Wright applied for FMLA and ADA accommodations through Sun Life and requested coverage for the period of June 24, 2024, through December 31, 2025.

41. On or about February 4, 2025, Sun Life confirmed receipt of Ms. Wright's request for intermittent leave, denied her request for FMLA between June 24, 2024, and April 21, 2025 (as she had not been employed long enough) and indicated that Defendants needed a health care certification to evaluate Ms. Wright's request for accommodations under the ADA.

42. Sun Life directed Ms. Wright to have her physician complete and return a Medical Inquiry Form Related to an Accommodation Request (the "Certification").

43. On or about February 11, 2025, Ms. Wright's physician completed and faxed the Certification to Sun Life.

44. The same day, Defendants (via Sun Life) notified Ms. Wright that her request for intermittent FMLA usage for the period of June 24, 2024, through April 21, 2025, had been denied because she was "ineligible – length of employment."

45. Sun Life did, however, grant Ms. Wright intermittent leave under the FMLA, beginning on April 22, 2025, through June 23, 2025.

46. In or about February 2025, Defendants admit to conducting a retroactive review of Ms. Wright's attendance record to determine if any of her points accrued were related to her disabilities.

47. Glaringly though, this review only considered Ms. Wright's 2025 absences and did not forgive Ms. Wright's attendance points related to her aforementioned disabilities from 2024.

48. On or about February 19, 2025, Ms. Wright was absent from work due to an adverse reaction to injections she had received to treat her aforementioned disabilities.

49. However, the following day, February 20, 2025, McNeil and Kull terminated Ms. Wright because of her attendance points – including absences that should have been covered under the ADA.

50. While Kull was terminating her, Ms. Wright asked point blank if she should be terminated even though her absences were related to her aforementioned disability, and pending ADA and FMLA requests, but was told that it was "a little too late."

51. When Defendants terminated Ms. Wright for attendance points, they counted known disability-related absences against her instead of undertaking an individualized assessment of Ms. Wright's circumstances and/or engaging in an interactive process in good faith.

52. After she was terminated, Ms. Wright for the first time learned that Sun Life had approved her request for ADA accommodations/intermittent leave beginning on January 1, 2025, through April 21, 2025.

53. However, Sun Life denied her request under the ADA for the June 24, 2024 - December 31, 2024 time period claiming that Ms. Wright somehow "did not engage in interactive process in good faith."

54. To be clear, neither Defendants nor Sun Life notified Ms. Wright whether her ADA requests had been approved or denied, nor did either engage in any interactive process with her.

55. Further, Ms. Wright had followed Defendants' policies, communicated with her manager about her disabilities and need for accommodations, and provided all requested information in a timely fashion.

56. The simple fact is that Defendants and Sun Life had to deny Ms. Wright's ADA request as she had already been terminated explicitly for requiring reasonable accommodations in the form of intermittent-disability related absences.

**COUNT I**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff suffers from qualifying health conditions under the ADA, which at times substantially limited one or more major life activities (as set forth *supra*).

59. Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the essential functions of her position with Defendants.

60. Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendants' management and requested accommodations on repeated occasions shortly before Defendants terminated her employment.

61. Defendants applied an automatic points policy to Plaintiff's absences, and refused to accommodate her disability by disciplining her for taking intermittent time off when her aforementioned disabilities flared up.[1]

[1] *See e.g. Smith v. N. Shore-Long Island Jewish Health Sys*., 286 F. Supp. 3d 501, 525 (E.D.N.Y. 2018) ("[T]he Court finds [plaintiff] to be qualified within the meaning of the ADA with the reasonable accommodation of intermittent leave."); *Hall v. Wash. Metro. Area Transit Auth.*, 2020 U.S. Dist. LEXIS 183477, *36 (D.D.C. 2020)(counting disability-related absences against plaintiff can constitute denial of a reasonable accommodation); *Westbrooks v. Baltimore Cty.*, 2019 U.S. Dist. LEXIS 140647, *34 (D. Md. 2019)(reasonable jury could conclude employer failed to consider reasonable accommodation of absenteeism for employee).

62. Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of her employment with Defendants.

63. Plaintiff avers that Defendants failed to reasonably accommodate her and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the ADA.

64. Defendants' actions constitute violations of the ADA.

**COUNT II**
**<u>Violations of the Family and Medical Leave Act ("FMLA")</u>**
**(Interference and Retaliation)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff was imminently to become an employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(2)(A) as of April 22, 2025.[2]

67. Plaintiff provided Defendants with appropriate notice of her need for protected leave.

[2] *See e.g., Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269 (11th Cir. 2012) (The Family and Medical Leave Act (FMLA) "protects a pre-eligibility request for post-eligibility leave." That is, the FMLA protects an employee who gives notice, before she is eligible for leave, of intent to take FMLA leave for a qualifying reason once she becomes eligible. The court stated that its holding does not expand FMLA coverage to a new class of employees; rather, it means that an employee who is not yet eligible for FMLA leave may bring a lawsuit if an employer terminates the employee "in order to avoid having to accommodate that employee with rightful FMLA leave rights once that employee becomes eligible."). *See also*, *Brooks v. Valley Day Sch.*, No. 14-5506, 2015 U.S. Dist. LEXIS 69794, at *12 (E.D. Pa. 2015)(firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee"); *Thomas v. Brandywine Hosp.*, LLC, 2022 U.S. Dist. LEXIS 29362, 2022 WL 507478, at *4 (E.D. Pa. 2022) (quoting 29 C.F.R. § 825.220(b))(FMLA interference if employee requested FMLA leave and was subsequently terminated); *Fagan v. Elwyn Inc.*, 2017 U.S. Dist. LEXIS 127706, 2017 WL 3456528, at *2 (E.D. Pa. 2017); *Erdman v. Nationwide Ins. Co*, 582 F.3d at 500, 509 (3d Cir. 2009)(Holding that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee).

68. During the twelve-month period immediately preceding her anticipated use of the FMLA leave at issue, Plaintiff would have worked at least 1,250 hours for Defendants.

69. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C. § 2611(4)(A)(i).

70. Plaintiff would have been entitled to receive leave pursuant to 29 U.S.C. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

71. Defendants committed interference and retaliation violations of the FMLA by inter alia: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) terminating Plaintiff to dissuade Plaintiff (or others) from utilizing FMLA leave; (3) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (4) terminating Plaintiff to prevent her from taking FMLA-qualifying leave; and (5) taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

72. These actions as aforesaid constitute violations of the FMLA.

**COUNT III**
**<u>Violations of the PHRA</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

74. Plaintiff suffers from qualifying health conditions under the PHRA, which at times substantially limited one or more major life activities (as set forth *supra*).

75. Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the essential functions of her position with Defendants.

76. Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendants' management and requested accommodations on repeated occasions shortly before Defendants terminated her employment.

77. Defendants applied an automatic points policy to Plaintiff's absences, and refused to accommodate her disability by disciplining her for taking intermittent time off when her aforementioned disabilities flared up.

78. Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of her employment with Defendants.

79. Plaintiff avers that Defendants failed to reasonably accommodate her and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the PHRA.

80. Defendants' actions constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered unlawful employment practices, retaliation, and discrimination at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including compensatory damages including damages for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: September 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Rebecca Wright | : | CIVIL ACTION |
| v. | : | |
| Tower Health Medical Group, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 9/23/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WRIGHT, REBECCA

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

TOWER HEALTH MEDICAL GROUP, ET AL.

County of Residence of First Listed Defendant: Berks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 9/23/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______